IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                                          CIV 99-1064 JP/KBM
                                                                        CR 96-210 JP

JOSE VASQUEZ-PULIDO,

    Defendant-Movant

PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

    This matter is before the Court on Plaintiff's *pro se* Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. *Doc. 1 (hereinafter "Motion")*. Plaintiff asserts that he was denied effective assistance of counsel at trial. Having considered the arguments, pleadings, relevant law, and being otherwise fully advised, I find that the issues raised by the motion are not procedurally barred. I further find that Plaintiff is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel based upon his attorney's alleged failure to advise him of his right to testify at trial.

### I. Facts/Procedural Background

    United States Customs Agents arrested Plaintiff Jose Vasquez-Pulido ("Vazquez") on March 19, 1996 at the Columbus, New Mexico Port of Entry for importation of heroin and methamphetamine. Earlier that morning, Plaintiff's brother Javier Vasquez-Pulido ("Javier") had driven into the Port of Entry from the Republic of Mexico. U.S. Customs Inspector Greifinger detected a strong odor of perfume coming from the inside of the car. Recognizing that smugglers

frequently use perfumed products to mask the smell of narcotics, Inspector Greifinger had a drug canine sniff the vehicle. *April 23, 1997 Trial Transcript at 16-17 (hereinafter "Trial Tr.")*. When the dog "alerted" to the dash area, agents searched and found twenty-two pounds of black-tar heroin and one hundred grams of pure methamphetamine, valued at about $22,000,000. Javier first stated to Inspector Marley that the car containing the drugs belonged to a friend but later asserted that it belonged to his brother. *March 25, 1997 Transcript of Motion Hearing at 7-8 (hereinafter "Hearing Tr."); Trial Tr. at 115*. These statements were communicated to the agents handling Javier's arrest and the narcotics seizure.

Approximately one hour later, Plaintiff appeared at the same Port of Entry seeking to enter the United States. He was traveling on foot and stated that he was traveling to California although he had no luggage with him. Plaintiff claimed to have lost his resident alien card, and his temporary deferral of inspection card had expired. When Customs Inspector Rene Alvarez offered to help him re-apply for a replacement resident alien card, Plaintiff responded that he would like to do so. Plaintiff then returned to Mexico to have photographs taken for a new card. *Hearing Tr. at 22-25, 29*.

During Plaintiff's absence, Inspector Alvarez prepared the necessary paperwork to obtain the replacement card. He noticed that Plaintiff's birthplace and parents' names were the same as those listed for Javier. Also, the first four numbers of Javier's and Plaintiff's resident alien numbers were identical, indicating that the cards likely were issued from the same location. Based upon the above facts, Customs agents also arrested Plaintiff on drug charges when he returned to the Port of Entry with his photographs. *Id. at 24-27*

A federal grand jury in the District of New Mexico returned an indictment against Plaintiff

and his brother on April 17, 1996 on five counts *(Doc. 11)*, which was twice superceded. The second superseding indictment *(Doc. 68)* charged the brothers as follows:

Count I – conspiracy to import narcotics in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2;
Count II – conspiracy with intent to distribute heroin in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2;
Count III – importation of heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(A) and 18 U.S.C. § 2;
Count IV – possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841 (a)(1), 841 (b)(1)(A) and 18 U.S.C. § 2;
Count V – importation of methamphetamine in violation of 21 U.S.C. §§ 952(a), 960 (a)(1), 960 (b)(1)(A) and 18 U.S.C. § 2; and
Count VI – possession with intent to distribute methamphetamine contrary to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.

Although Plaintiff pled not guilty, Javier pled guilty on March 25, 1997. The United States then moved to dismiss Count I of the second superseding indictment against Plaintiff. *Hearing Tr. at 3*. Following a trial before United States District Judge James A. Parker, in which Javier testified against his brother, the jury convicted Plaintiff on the remaining five counts. *Docs. 40 & 118*. The Court sentenced Plaintiff to 262 months in prison on all counts, to be served concurrently, followed by five years supervised release on Counts III and V.

In his timely appeal, Plaintiff challenged the Court's denial of his suppression motion and its decision to permit the United States to cross-examine his psychologist about a pre-trial competency examination. The Tenth Circuit addressed both claims on the merits and affirmed the conviction on September 1, 1998. *United States v. Vazquez-Pulido*, 155 F.3d 1213 (10th Cir. 1998), *cert. denied* 119 S.Ct. 437 (1998). Plaintiff did not petition the United States Supreme Court for a writ of *certiorari*.

## II. ISSUES AND ANALYSIS

Plaintiff timely filed the present § 2255 motion on September 22, 1999. Plaintiff argues

3

that his counsel was ineffective because his counsel: (1) chose to employ a "diminished capacity" defense strategy; and (2) failed to inform him of his constitutional right to testify at trial.

### A. Plaintiff's Claims Are Not Procedurally Barred

The United States argues that the Court need not address the merits of Plaintiff's motion because he is procedurally barred from raising in this § 2255 motion "substantive constitutional" issues that could have raised on direct appeal. The Government maintains that Plaintiff has framed the denial of a criminal defendant's fundamental right to testify issue in terms of ineffective assistance of counsel "in a time worn attempt to bypass this procedural obstacle." *Answer at 2; see United States v. Galloway*, 56 F.3d 1239, 1241 (10th Cir. 1995) (procedural bar inapplicable to ineffective assistance of counsel claims, overruling *United States v. Beaulieu*, 930 F.2d 805, insofar as it required some ineffectiveness claims to be brought on direct appeal).[1]

Plaintiff alleges that his counsel rendered ineffective assistance when he "failed to advise, inform, examine and protect the fundamental constitutional right to testify." Without doubt, informing the defendant of his right to testify is a "substantial constitutional" issue "because there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right or privilege.'" *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir.1992). Nevertheless, the Tenth Circuit has analyzed the precise issue

---

[1] Indeed, ineffective assistance claims ordinarily **should** be brought in collateral proceedings, not on direct appeal, because development of a factual record on the question in the district court, which is necessary for appellate review, rarely exists on direct appeal. *See Galloway*, 56 F.3d at 1420 (even if record appears fully developed, the claim should still be presented to the district court in collateral proceedings to give the reviewing court the benefit of the district court's views).

4

raised by Plaintiff in the context of an ineffective assistance of counsel claim.[2]  *United States v. Dryden*, 1998 WL 930582 (10th Cir. 1998) (unpublished) (attached).  Therefore, the ineffective assistance claims are properly before the Court in this proceeding.

### B.  Counsel was not Ineffective in Pursuing a Diminished Capacity Defense

Plaintiff contends that counsel's strategy of pursuing a diminished capacity defense constitutes ineffective assistance of counsel.  Before trial, Plaintiff filed a motion for a competency evaluation May 15, 1996.  *Doc. 17*.  The Court granted the motion, and appointed Dr. Juan Sosa to perform the evaluation.  *Doc. 29*.   Plaintiff and his counsel agreed with Dr. Sosa's finding of competency, and the Court entered its order finding Plaintiff competent to stand trial.  *Doc. 109*.

After employing another psychologist, Dr. Jorge Vargas, Plaintiff's counsel notified the government that he intended to call this doctor as an expert witness on Plaintiff's mental condition as to the issue of guilt.  At trial, Dr. Vargas testified that Plaintiff may have suffered from severe depression, mild retardation, and post-traumatic stress disorder.  Dr. Vargas also opined that Plaintiff lacked the specific intent to commit the crimes charged.  *Trial Tr. at 151-54*.  On cross-examination, however, Dr. Vargas admitted that he had no reason to doubt the results of Dr.

---

[2]  Ineffective assistance of counsel claims are analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to establish ineffective assistance of counsel, Plaintiff must demonstrate the following:
> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are reliable.

*Id*. at 687.

Sosa's competency evaluation. *Id. at 159, 161-63*

"Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689 (citations omitted). Thus, even laying aside the presumption of "reasonable professional assistance," I find that the performance of Plaintiff's counsel was in no way deficient in pursuing a diminished capacity defense and recommending that Plaintiff not testify. Rather, given that his client would have been subjected to cross-examination about prior convictions, such strategy and advice appear to be reasonable even in hindsight. *See Strickland*, 466 U.S. at 689.

### C. Plaintiff's is Entitled to an Evidentiary Hearing on Only One Issue

Plaintiff maintains that after hearing his brother's testimony, he told his attorney that Javier was being untruthful and that he wanted to take the stand and testify on his own behalf. Plaintiff says that his attorney refused to let him take the stand, and said, "No, I don't want you to say nothing." In his "Declaration" attached to the motion, Plaintiff states

> I, at that time, did not know that I had a constitutional right to testify or that this right existed. . . . Mr. Morgan Lyman, never informed me about my constitutional right to testify nor that it was my decision whether to take the stand or not [and] did not, at no time, discuss with me about the strategic choice of taking the stand, whether it was a good idea or not. . . . [H]ad I known the right to testify was my choice to make, I would have positively taken the stand because my brother was being untruthful about me.

Plaintiff's allegations are sufficient, if proven, to support a finding that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. As the Tenth

Circuit found in its unpublished *Dryden* decision,

> "Although advising the defendant not to testify can be appropriate trial strategy, failing to advise the defendant of his right to testify or refusing to call the defendant to testify despite his desire to do so cannot be. Therefore, defendant's allegations that defense counsel failed to inform him that he alone controlled the decision to testify and that defense counsel failed to let him testify despite his expressed desire to do so, if proved, would be sufficient to meet the first requirement of the *Strickland* test."

*Id.* (*quoting United States v. Hershberger*, 1991 WL 136337 at *3 (10th Cir. July 24, 1991) (unpublished)).[3]

The United States counters with an affidavit by Plaintiff's attorney, R. Morgan Lyman, in which he declares:

> Generally, in every case in which I represent a criminal defendant, I routinely advise my client that the following decisions rest entirely with the client: a) Whether to plead or go to trial; b) Whether to testify on his own behalf if he elects to go to trial; c) Whether to appeal. . . . I also provide each client with recommendations as to the above courses of action, and advise them that they are free to choose to deviate from my recommendations. . . . I do not believe that I deviated from my routine practice in this case.

*Answer, Exhibit A*. This declaration may indeed constitute evidence that Vazquez-Pulido's attorney likely informed his client of his rights. However, given Plaintiff's allegations, the declaration does not <u>conclusively</u> establish that counsel complied with these duties in this case. A plaintiff has a right to an evidentiary hearing "[u]nless the motion and the files and the records of

---

[3] *See also United States v. Ortiz*, 82 F.3d 1066, 1070 (D.C. Cir.1996) ("Thus, defense counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not."); *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir.1995) ("[W]e realize that a convicted defendant may assert a claim that the trial attorney gave ineffective assistance under *Strickland v. Washington* . . . by failing to advise the defendant of his or her right to testify").

7

the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Thus, Plaintiff is entitled to an evidentiary hearing if he has sufficiently alleged the second *Strickland* prong – a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Plaintiff insists that he would have taken the stand and would have testified as follows: he was unaware of the drugs in the car; he did not repeatedly request that Javier drive the car; he lacked the knowledge to pack the drugs, being a farmer and not a mechanic; he had no money, property, wife -- financial responsibility for which might tempt him to engage in drug trafficking; and he had always protected Javier and shouldered Javier's guilt.

Plaintiff does not dispute that his prior convictions for drug possession would have become an issue had he taken the stand, but he contends that he could have convinced the jury that the convictions demonstrate a mere drug abuse problem, not involvement in drug trafficking. In *Dryden* (attached), the Tenth Circuit found that *pro se* allegations even more "skimpy on details . . . are not so conclusory as to justify denying an evidentiary hearing." Therefore, I will recommend that an evidentiary hearing be granted solely on the issue of whether Plaintiff was advised by counsel that it is the criminal defendant's decision whether to testify on his own behalf, and whether the outcome would have been different had such advice been given.

Wherefore,

**IT IS HEREBY RECOMMENDED** that as to Plaintiff's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody *(Doc. 1)*, the District Judge find as follows:

1. Plaintiff's ineffective assistance of counsel claims are not procedurally barred;

2. Plaintiff's ineffective assistance of counsel claim based upon pursuing a diminished capacity defense is without merit; and

3. Counsel should be appointed to represent Plaintiff at an evidentiary hearing to be held solely on the remaining issue of whether his attorney's alleged failure to advise Plaintiff of his right to testify denied Vazquez-Pulido of effective assistance of counsel.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works   **Attachment**

166 F.3d 1222 (Table)
**Unpublished Disposition**

**(Cite as: 166 F.3d 1222, 1998 WL 930582 (10th Cir.(Kan.)))**

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

**UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Edward DRYDEN, Defendant-Appellant.**

No. 97-3280.
D.C. No. 96-3241-JWL.

United States Court of Appeals Tenth Circuit.

April 22, 1998.

Before BALDOCK, EBEL and MURPHY, Circuit Judges.

ORDER GRANTING PETITION FOR REHEARING

**\*\*1** Edward Dryden ("Dryden") has petitioned for rehearing. For the following reasons, we GRANT his petition to rehear his claim that he was denied the effective assistance of counsel, VACATE that portion of our order and judgment dated March 10, 1998, addressing the ineffective counsel issue, REVERSE the judgment of the district court on this issue, and REMAND for further proceedings.

In his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Dryden alleged that his counsel acted ineffectively by failing affirmatively to inform him that it was Dryden's decision whether or not to testify on his own behalf. (R. 314 at 3, 4, 5.) In its order denying Dryden's motion, the district court did not address this precise claim, but rather focused on the fact that counsel did not tell Dryden that the decision to testify or not resided with counsel. (R. 337 at 7-9.)

We find that Dryden's claim sufficiently alleges performance which "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In United States v. Hershberger, 1991 WL 136337 (10th Cir. July 24, 1991) (unpublished), we stated:
> Although advising the defendant not to testify can be appropriate trial strategy, failing to advise the defendant of his right to testify or refusing to call the defendant to testify despite his desire to do so cannot be. Therefore, defendant's allegations that defense counsel failed to inform him that he

alone controlled the decision to testify and that defense counsel failed to let him testify despite his expressed desire to do so, if proved, would be sufficient to meet the first requirement of the Strickland test.

Id. at *3 (internal citations omitted); see also Brown v. Artuz, 124 F.3d 73, 79 (2d Cir.1997) ("Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter."), cert. denied, --- U.S. - - - - , 118 S.Ct. 1077, 140 L.Ed.2d 135, 1998 WL 70413 (U.S. Feb. 23, 1998); United States v. Ortiz, 82 F.3d 1066, 1070 (D.C.Cir.1996) ("Thus, defense counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not."); United States v. Pennycooke, 65 F.3d 9, 13 (3d Cir.1995) ("[W]e realize that a convicted defendant may assert a claim that the trial attorney gave ineffective assistance under Strickland v. Washington ... by failing to advise the defendant of his or her right to testify."); United States v. Teague, 953 F.2d 1525, 1533 (11th Cir.1992) ("Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right or privilege." ').

**\*\*2** Having sufficiently alleged the first prong of the Strickland test, Dryden must also adequately show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The district court held that Dryden had not made such a showing because he had made only a "conclusory allegation that he would have 'told [his] side of the story to the jury." ' (R. 337 at 9.) We have stated that conclusory allegations are insufficient to warrant an evidentiary hearing on ineffective assistance of counsel. See Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir.1995). However, we have examined the traverse that Dryden submitted with his petition for rehearing, and are convinced from the district court's oblique references in its order that the traverse was before the district court. [FN1] In the traverse, Dryden states that, if he had testified, he would have "denied his involvement in the alleged conspiracy," he would have "specifically denied many of the specific allegations made by several of the government's witnesses," and that his testimony would have rebutted the testimony of a witness that otherwise stood unrebutted. (Traverse at 9-10.) Although Dryden's allegations are somewhat skimpy on details, given his pro se status we believe that they are not so conclusory as to justify denying an evidentiary hearing. See 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon ....") (emphasis added).

> FN1. The government does not argue either that Dryden did not file the traverse in the district court or that we should not consider the copy of the traverse Dryden attached to his

petition for rehearing.

We REVERSE the district court's dismissal of Dryden's claim that he received ineffective assistance of counsel, VACATE that portion of our order and judgment dated March 10, 1998, dealing with the ineffective counsel issue, and REMAND for the district court to hold an evidentiary hearing on the ineffective counsel issue. The remaining portion of our March 10, 1998 order and judgment shall remain in effect. Of course, we venture no opinion on the final outcome of the case. After holding the hearing, the district court may conclude that Dryden was properly advised or that there is no reasonable probability that the result of his trial would have been different had he testified.

The petition for rehearing en banc has been circulated to the active judges and no judge has called for a poll on the en banc suggestion. Thus, the petition for en banc review is denied.

Judge Baldock dissents from the entry of this order and would deny rehearing in this matter.

The mandate shall issue forthwith.

END OF DOCUMENT